**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **VALLEY FORGE RENAISSANCE, L.P.,** )<br>)<br>**Plaintiff,** )<br>)<br>**vs.** )<br>)<br>**GREYSTONE SERVICING CORP. INC.,** )<br>)<br>**Defendant.** )<br>) | **Cause No. 1:09-cv-131-WTL-JMS** |

## ENTRY ON DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

The parties are before the Court on the Defendant's Motion for Judgment on the Pleadings (Docket No. 20).  The motion is fully briefed, and the Court being duly advised, **GRANTS IN PART AND DENIES IN PART** the Defendant's motion for the reasons, and to the extent, set forth below.

## I.  RULE 12(c) STANDARD

In reviewing a motion for judgment on the pleadings, the Court must apply the same standard that applies to a motion to dismiss under Rule 12(b)(6), and therefore must take the facts alleged in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. The complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and there is no need for detailed factual allegations.  However, the statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## II.  BACKGROUND

In September 2007, the Plaintiff, Valley Forge Renaissance, L.P. ("Valley Forge"), entered into a Permanent Loan Commitment ("Commitment") with the Defendant, Greystone Servicing Corporation, Inc. ("Greystone").  The Commitment included an additional delivery assurance deposit clause ("Clause 2(G)") which stated:

> If, after Rate Lock and prior to Permanent Loan Closing, the interest rate of the Benchmark Treasury drops by more than 33 basis points, Borrower shall pay an additional three percent (3%) Delivery Assurance Deposit upon notice from Greystone.  In addition, for each additional 11 basis point drop, Borrower must pay an additional one percent (1%) Delivery Assurance Deposit.  Upon the successful purchase of the Permanent Loan by Fannie Mae, Greystone shall refund 100% of the total Delivery Assurance Deposit to Borrower.

Compl. Ex. B ¶ 2(G).

On December 4, 2007, Greystone notified Valley Forge that it owed an additional $218,885.00, pursuant to Clause 2(G) and that payment was required within 48 hours.  Valley Forge never tendered the funds.  Several weeks later, on January 11, 2008, Greystone sent Valley Forge another notice informing it that, "in addition to previous deposits," Compl. ¶ 12, Valley Forge owed $175,108.00, pursuant to Clause 2(G).  Again, payment was demanded within 48 hours, and again, Valley Forge failed to comply.[1]  The pattern continued on February 4, 2008, when Greystone demanded an additional $124,654.75, under Clause 2(G).  Valley Forge did not make the payment.  Undeterred, Greystone tried again in March.  On March 19, 2008, Greystone sent Valley Forge a demand for $132,269.38, payment due within 48 hours.  Although Valley Forge did make this payment, it did so on April 24, 2008, a full 34 days late.

On September 25, 2008, Greystone and Valley Forge entered into a rate lock extension,

---

[1] This time Valley Forge paid the demanded sum; however, it failed to meet the 48-hour deadline and tendered payment on January 26, 2008, more than a week after payment was due.

so that the rate lock period continued until January 4, 2009.  Because the rate lock period was

extended, Clause 2(G) continued to apply.  Accordingly, in November 2008, pursuant to Clause

2(G), Greystone demanded another $130,392.00, from Valley Forge.  Unlike prior demands, this

notice set a specific time and date for payment – Monday, November 24, 2008, at 3:00 p.m.  On

November 20, after receiving the payment notice, a Valley Forge representative informed

Greystone that the company was working with its bank to raise the funds and that the money

would be transferred to Greystone as soon as the bank advanced the money to Valley Forge.

The parties communicated again on the afternoon of November 24.  Around noon a

Valley Forge representative emailed Greystone employee Thom Ruffin to inform him that Valley

Forge was working with the bank to deliver the funds as soon as possible.  Shortly after 2 p.m.,

Ruffin replied and asked if the transfer was underway.  The Valley Forge representative replied

with evidence that the bank had approved the advance and that the funds would be available for

transfer immediately.  However, the transfer was not actually made until November 26.

On November 25, before the wire transfer occurred, Ruffin sent Valley Forge a

termination letter, which stated that the Commitment would be terminated effective December 1,

2008, unless Valley Forge tendered the $130,392.00, that was due on November 24.  On

November 26, after a Valley Forge representative ordered the bank to begin the wire transfer to

Greystone, a Valley Forge representative received a second termination letter.  This letter

purported to revoke the first letter and stated that the Commitment was terminated "as of 3:01

P.M. November 24, 2008 when the Borrower failed to post the additional funds demanded."

Compl. Ex. N at 1.  Greystone disclaimed its obligation to provide the permanent loan

contemplated by the Commitment.  *Id.*  Hours later, the bank informed Valley Forge that the

wire transfer was complete and Greystone was in possession of the $130,392.00.[2]

Since November 26, Greystone has refused to close the Valley Forge transaction and has refused to return Valley Forge's first two deposits.  Accordingly, Valley Forge initiated this litigation in Marion County Circuit Court.  Greystone properly removed the case to this Court under 28 U.S.C. §§ 1441 and 1332.

### III.  DISCUSSION

In Count I of its Complaint, Valley Forge alleges that Greystone committed an anticipatory breach of the Commitment.  Greystone counters by arguing that Count I must be dismissed because Valley Forge breached the Commitment first.  Essentially, Greystone claims that because Valley Forge breached first, it cannot now sue Greystone for anticipatory breach of the Commitment.  It is clear that the "party first guilty of a material breach of contract may not maintain an action against the other party or seek to enforce the contract against the other party should that party subsequently breach the contract."  *Licocci v. Cardinal Assocs., Inc.*, 492 N.E.2d 48, 52 (Ind. Ct. App. 1986).  However, this does not lead to Greystone's desired conclusion.  Whether a breach of a contract is material is a question of fact.  *See Canada Dry Corp. v. Nehi Beverage Co., Inc. of Indianapolis*, 723 F.2d 512, 517 (7th Cir. 1983). Accordingly, Greystone's argument that Valley Forge committed the first breach raises a factual issue, which precludes entry of judgment on the pleadings.

Count II of the Complaint alleges conversion.  Greystone argues that "there is no need for a tort remedy where the source of each party's duty to the other arises from a contract," and even

---

[2] In the Complaint, Valley Forge implies that Greystone refused to return this final payment.  However, in its Response to this Motion, Valley Forge acknowledged that Greystone did indeed return the $130,392.00 payment.

if a cause of action for conversion was available, Valley Forge has not plead facts to support this claim. Although framed as separate arguments, this essentially amounts to an assertion that Valley Forge's conversion allegation is merely "a repackaged version of its breach of contract claim." *French-Tex Cleaners, Inc. v. Cafaro Co.*, 893 N.E.2d 1156, 1167 (Ind. Ct. App. 2008).

In *French-Tex*, the trial court granted the defendant's motion for summary judgment on the conversion claim. The court of appeals upheld the trial court because the dispute in *French-Tex* was essentially one of contract interpretation. *Id.* The court emphasized that "the Indiana legislature did not intend to criminalize bona fide contract disputes," and when the source of a duty arises from a contract "'tort law should not interfere.'" *Id.* at 1167-68 (quoting *Paniaguas v. Endor, Inc.,* 847 N.E.2d 967, 970 (Ind. Ct. App. 2006)). Accordingly, the court refused to deem the defendant's conduct unauthorized.

Also relevant is *Greg Allen Construction Co., Inc. v. Estelle*, 798 N.E.2d 171 (Ind. 2003). In *Greg Allen*, the court held that "[t]o the extent that a plaintiff's interests have been invaded beyond a mere failure to fulfill contractual obligations, a tort remedy should be available." *Id.* at 173. But where "there is no claim of injury that the law would protect if there were no contract," there can be no tort suit. *Id.*

Turning to the case at bar, Greystone will be liable for conversion if it "knowingly or intentionally exert[ed] unauthorized control over property of another person." Ind. Code 35-43-4-3(a). To prevail at trial, Valley Forge will have to prove the elements of conversion by a preponderance of the evidence. *See French-Tex*, 893 N.E.2d at 1166. This includes proving *mens rea*, which "differentiates criminal conversion from a more innocent breach of contract or failure to pay a debt, which situations the criminal conversion statute was not intended to cover."

*JET Credit Union v. Loudermilk*, 879 N.E.2d 594, 597 (Ind. Ct. App. 2008), *trans. denied*, 891 N.E.2d 49 (Ind. 2008).  "To establish this element of the crime of conversion, a plaintiff must show the defendant was aware of a high probability his control over the plaintiff's property was unauthorized."  *Id.*  Whether a defendant possesses the requisite *mens rea* is a genuine issue of material fact.  *See Mills v. Kimbley*, 909 N.E.2d 1068, 1078 (Ind. Ct. App. 2009).  Accordingly, judgment on the pleadings is inappropriate.

As to Count III, which alleges theft, Greystone argues that "for the same reasons Valley [Forge's] conversion claims fail, its claims for criminal theft must also fail as a matter of law." Def. Br. at 12-13.  Because theft is a lesser-included offense of conversion, and because Greystone claims that Valley Forge has not alleged the elements necessary for a claim of conversion, Greystone argues that Count III must be dismissed.  Like conversion, theft requires the defendant to act "knowingly or intentionally."  Ind. Code 35-43-4-2(a).  Because there is a material issue of fact as to whether Greystone possessed the requisite *mens rea*, judgment on the pleadings is not appropriate on Count III.

Finally, Greystone argues that Count IV, which alleges fraud and criminal deception, fails as a matter of law.  Greystone claims that not only has Valley Forge failed to comply with Federal Rule of Civil Procedure 9(b), which requires fraud to be pled with specificity, but that Valley Forge has not alleged that Greystone made any material misrepresentation of existing fact.

"The purpose of requiring that fraud be pleaded with particularity is not, as it might seem . . . to give the defendant in such case enough information to prepare his defense."  *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999), *cert. denied*, 528 U.S. 874

6

(1999) (citations omitted).  Instead, "[t]he purpose (the defensible purpose, anyway) of the heightened pleading requirement in fraud cases is to force the plaintiff to do more than the usual investigation before filing his complaint."  *Id.*  "Greater precomplaint investigation is warranted in fraud cases because public charges of fraud can do great harm to the reputation of a business firm or other enterprise (or individual)."  *Id.* (citations omitted).  Accordingly, plaintiffs who allege fraud must prove the "who, what, where and when of the alleged fraud."  *Id.*

According to the Indiana Supreme Court, the elements of actual fraud are: "(i) material misrepresentation of past or existing facts by the party to be charged (ii) which was false (iii) which was made with knowledge or reckless ignorance of the falseness (iv) was relied upon by the complaining party and (v) proximately caused the complaining party injury."  *Rice v. Strunk*, 670 N.E.2d 1280, 1289 (Ind. 1996).  Greystone takes issue with the first element and claims that it made no misrepresentation of past or existing fact.

In its Response, Valley Forge alleges that its "claim of fraud is based on the actions of [Greystone employee] Thomas Ruffin."  Resp. at 16.  Specifically, Valley Forge takes issue with Ruffin's conduct between November 24 and 26, 2008.  It points to email communication on the 24th between Ruffin and Valley Forge in which Valley Forge confirms that the funds would be ready for transfer immediately.  Then, on the 25th, allegedly with knowledge that the funds were available, Ruffin sent Valley Forge a termination letter.  The next day, apparently after the wire transfer was underway, Ruffin emailed Valley Forge a second termination letter, revoking the prior letter and terminating the Commitment immediately.  This explanation, like the Complaint, fails to identify any misrepresentation of existing fact.  Accordingly, it cannot support a cause of action for fraud.

7

Similarly, because the elements of criminal deception under Indiana Code 35-43-5-3(a)(2) are the same as the elements of fraud,[3] Valley Forge faces the same problem – it has failed to plead that Greystone made any false or misleading statements.  Accordingly, judgment on the pleadings is appropriate as to Count IV.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion for Judgment on the Pleadings (Docket No. 20) is **GRANTED** as to Count IV; however, the Motion is **DENIED** as to Counts I, II, and III.

SO ORDERED:  01/06/2010

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Michael J. Alerding
Alerding Castor, LLP
malerding@alerdingcastor.com

Samuel J. Schmutte
Alerding Castor, LLP
sschmutte@alerdingcastor.com

Ted W. Nolting
Riley Bennett & Egloff LLP
tnolting@rbelaw.com

Christopher C. T. Stephen
Alerding Castor, LLP
cstephen@alerdingcastor.com

James W. Riley Jr.
Riley Bennett & Egloff LLP
jriley@rbelaw.com

---

[3] According to the statute, "[a] person who . . . knowingly or intentionally makes a false or misleading written statement with intent to obtain property, employment, or an educational opportunity . . . commits deception, a Class A misdemeanor."  Ind. Code 35-43-5-3(a)(2).